UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETIREE SUPPORT GROUP OF CONTRA COSTA COUNTY,<br><br>Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY,<br><br>Defendant. | Case No. 12-cv-00944-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

In this action for breach of contract and related claims, Defendant Contra Costa County ("the County") moves under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss the second amended complaint ("SAC") for failure to state a claim and for lack of standing, respectively. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. RSG's Claims

Plaintiff Retiree Support Group of Contra Costa County ("RSG") is a non-profit organization that promotes and protects the welfare, benefits, and interests of retired employees of the County ("retirees") and their dependents. SAC ¶¶ 3, 20. Some but not all of the retirees were represented by unions during their employment with the County. Id. ¶ 3.

RSG alleges that the County promised the retirees that they would receive retiree health care benefits for themselves and their dependents if they met certain criteria, and that the County would pay for 80% or more of the costs of these benefits for at least one plan for the lifetime of the retirees ("the 80% promise"). Id. ¶ 1. In exchange for the 80% promise, the retirees "gave up wage increases and other employment compensation and benefits," such as cost of living adjustments. Id. ¶¶ 1, 40.

RSG alleges that the 80% promise is contained in implied terms of several Memoranda of Understanding ("MOU") that were ratified through resolutions by the County's Board of Supervisors and in the resolutions themselves. In the complaint, RSG identifies several MOUs and Board resolutions that allegedly contain the 80% promise; some of them pertain to employees represented by unions and some pertain to unrepresented employees.

The ratified MOUs pertaining to represented employees contain express provisions stating that retiring employees would be eligible to receive future medical benefits if they were enrolled in one of the County's health plans at the time they retired. Id. ¶¶ 16-21. The 80% promise allegedly is contained in the implied terms of these MOUs. RSG alleges that the County's intent to create vested retiree health benefits in accordance with the 80% promise is evinced by extrinsic evidence, including the testimony of labor representatives and County officials who negotiated the agreements containing the 80% promise, statements made by members of the Board of Supervisors, and benefit materials and booklets. Id. ¶¶ 21-27.

The Board resolutions pertaining to unrepresented employees contain express provisions stating that retirees would be able to retain their health benefits after entering retirement. Id. ¶¶ 35-37; Request for Judicial Notice ("RJN"), Ex. 16.[1] The 80% promise allegedly is contained in the implied terms of the resolutions. SAC ¶ 42. RSG alleges that the County's intent to create vested retiree health benefits per the 80% promise is evinced by the County's practice of "mirror[ing] the retiree health benefits provided to unrepresented management employees to the benefits negotiated by its represented employees," and by the same extrinsic evidence discussed above with respect to the represented employees. Id. ¶¶ 36, 21-27.

RSG alleges that the County breached the 80% promise beginning on January 1, 2010, when it capped its contribution to the retirees' health benefits to a flat dollar amount. Id. ¶¶ 2, 43.

---

[1] The County has submitted copies of the MOUs and resolutions cited in the SAC. *See* RJN, ECF. Nos. 16, 56-53. The Court considers these documents without converting the County's motion into one for summary judgment because such documents are referenced in the SAC and no party has questioned their authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted).

1  This increased the retirees' share of the costs of their health benefits and shifted future cost
2  increases onto the retirees.  *Id.*
3  RSG brings six claims against the County: (1) breach of contract, (2) impairment of
4  contract under the California Constitution, (3) impairment of contract under the United States
5  Constitution, (4) promissory estoppel, (5) due process violations under the California Constitution,
6  and (6) due process violations under the United States Constitution.  RSG seeks injunctive and
7  declaratory relief that would require the County to fulfill its obligations under the 80% promise.
8  Id. ¶ 3.

**B.    Procedural History**

Before this action was reassigned to this Court, District Judge White dismissed all of RSG's claims with leave to amend on the basis that each of the claims requires the existence of an express or implied contract and that RSG failed to plead sufficient facts to establish the existence of such a contract.  He required that any amended complaint "allege all of the specific resolutions or ordinances that contain the 80% Promise for each of Plaintiff's members" or, if the 80% promise is contained in implied terms, the amended complaint "should allege the language or circumstances accompanying the passage of these ordinances and/or resolutions that clearly evince an intent to create private rights of a contractual nature enforceable against the County."  ECF No. 32.

## II.    LEGAL STANDARDS

**A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere

3

conclusory statements, do not suffice." Id. When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

### B. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).

In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air, 373 F.3d at 1039 (citations omitted).

### III. DISCUSSION

### A. Sufficiency of the SAC

The County moves under Rule 12(b)(6) to dismiss each of RSG's claims with prejudice on the basis that RSG has neither identified an express provision in the ratified MOUs or resolutions that contains the alleged 80% promise, nor alleged circumstances accompanying the passage of the MOUs or resolutions that "clearly evince an intent" to grant vested retiree benefits. It also argues that the MOUs and resolutions upon which RSG's claims are based cannot create vested rights because they have durational clauses that limit their terms to a certain period of time. Finally, the County argues that the anti-vesting provisions of California Government Code Section 31692 bar

4

1  RSG's claims.

2  Recent authority from the California Supreme Court and the Ninth Circuit compels the
3  court to reject these arguments. In Retired Emp. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange
4  ("REAOC"), the California Supreme Court held that a resolution or ordinance may contain
5  implied terms creating vested rights to retiree health benefits. 134 Cal. Rptr. 3d 779, 781 (Cal.
6  2011). Vested rights can be implied if there is "a clear basis in the contract or convincing extrinsic
7  evidence." Id. at 793.

8  The Ninth Circuit recently applied REAOC in the context of a Rule 12(b)(6) motion to
9  dismiss claims nearly identical to the ones at issue here, namely claims brought against a county
10 for of breach implied terms of an MOU that created vested retiree health benefits. Sonoma Cnty.
11 Ass'n of Retired Emp. v. Sonoma Cnty., 708 F.3d 1109, 1115 (9th Cir. 2013). It held that, to
12 survive a Rule 12(b)(6) motion, the complaint "must plausibly allege that the County: (1) entered
13 into a contract that included implied terms providing healthcare benefits to retirees that vested for
14 perpetuity; and (2) created that contract by ordinance or resolution." Id. (citing REAOC, 134 Cal.
15 Rptr. 3d at 779). The SAC meets both of these requirements.

16 RSG has satisfied the first requirement by alleging that the County explicitly promised
17 health care benefits to the retirees in ratified MOUs and Board resolutions, and by alleging that the
18 ratified MOUs and resolutions included implied terms containing the 80% promise. SAC ¶¶ 15-
19 20, 35-37; see also RJN, Ex. 1-94, ECF No. 47-53. RSG provides factual support for these
20 allegations by citing to specific ratified MOUs and resolutions in which the County agreed to
21 provide retiree health benefits to eligible retirees, and by alleging that that the County's 80%
22 promise is evinced by the testimony of former labor negotiators and County officials who
23 participated in the negotiation of the MOUs and resolutions, various statements by members of the
24 Board of Supervisors and County officials, pension materials and booklets, the County's
25 longstanding practices. Id. ¶¶ 21-32. These allegations, when taken as true, are sufficient to raise
26 the reasonable inference that the County intended to contractually bind itself to provide to the
27 retirees lifetime health care benefits in accordance with the 80% promise. See Sonoma, 708 F.3d
28 at 1116 (holding that the plaintiff plausibly alleged that the defendant intended to create vested

United States District Court
Northern District of California

retiree health benefits in an MOU's implied terms by alleging that the defendant "conveyed this intent in writing, orally, by implication, and through practice," that "former employees who drafted these documents would testify in support of the [plaintiff's] position regarding the background, purpose, and intent of the documents," and that "statements that at least one former Board member would testify as to the County's intent that the benefits vest in perpetuity") (internal quotation marks omitted).

RSG also has satisfied the second requirement by alleging that the implied 80% promise was created by resolutions or ordinances and that such promise was the product of a bargained-for exchange of consideration. RSG provides factual support for these allegations by citing to several resolutions by the Board of Supervisors that allegedly created the 80% promise and by alleging that the 80% promise was made in exchange for reduced wages, reduced pay increases, and other reductions in benefits. SAC ¶¶ 15-20, 35-37, 25, 27.

That the ratified MOUs and resolutions referenced in the complaint contain durational language is not dispositive of RSG's claims at this stage of the litigation. The County has pointed to no authority requiring that a claim for breach of an implied term in a ratified MOU or resolution be dismissed as a matter of law at the pleading stage on the basis that the MOU or resolution at issue contains a durational clause. The Ninth Circuit has suggested that durational language may require the dismissal of such a claim when the plaintiff "ha[s] failed to plead facts that suggest that the County promised" the rights at issue "in the MOUs or otherwise." Harris v. Cnty. of Orange, 682 F.3d 1126, 1135 (9th Cir. 2012). That is not the situation here, however, as RSG has pled sufficient facts to raise the reasonable inference that the County made the 80% promise, as discussed above.

Finally, the Court is not persuaded that Government Code Section 31692 bars RSG's claims, because the County has not shown that Section 31692 applies to the benefits at issue here. Section 31692 provides that "[t]he adoption of an ordinance or resolution pursuant to Section 31691 shall give no vested right to any member or retired member, and the board of supervisors or the governing body of the district may amend or repeal the ordinance or resolution at any time." Cal. Gov. Code. § 31692. Section 31691, in turn,

> "authorizes a county board of supervisors by ordinance (or a specified district by ordinance or resolution) to provide for the contribution by the county or district from its funds . . . toward the payment of all or a portion of the premiums on a policy or certificate of life insurance or disability insurance . . . or toward the payment of all or part of the consideration for any hospital service or medical service corporation, including any corporation lawfully operating under Section 9201 of the Corporations Code, contract, or for any combination thereof, for the benefit of any member heretofore or hereafter retired or his or her dependents. At least one of these plans shall include free choice of physician and surgeon."

REAOC, 134 Cal. Rptr. 3d at 793-94 (citing Cal. Gov. Code § 31691(a)) (internal quotation marks omitted).

In REAOC, the Supreme Court of California noted that the "precise relationship" between the services mentioned in section 31691 and retiree health benefits is unclear because another section of the California Government Code, namely Section 53201, authorizes counties to provide "health and welfare benefits" to retired employees, and such benefits are not subject to the restrictions of Section 31692. Id. at 793. Because the County has not presented evidence or authority that the Court may consider on a motion to dismiss showing that the benefits at issue are governed by Section 31692 and not by Section 53201, the County's argument that RSG's claims are barred by Section 31692 is unavailing.

In sum, RSG has plausibly alleged that the 80% promise is contained in implied terms to ratified MOUs and resolutions approved by the County's Board of Supervisors. As the County's challenges to each of the claims in the complaint are based on RSG's purported failure to sufficiently plead the existence of a contract containing the 80% promise, the County's motion to dismiss under Rule 12(b)(6) is DENIED.

**B.  Associational Standing**

The County also moves to dismiss each of the claims in the SAC on the basis that the County lacks associational standing to bring this action on behalf of the retirees. The County argues that the SAC does not invoke associational standing because the resolution of RSG's claims requires individualized factual inquiries and the participation of individual retirees.

An association has standing to bring claims on behalf of its members when "(a) its

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.</u>, 159 F.3d 1178, 1181 (9th Cir. 1998) (citation omitted).

Here, RSG has pled sufficient facts to invoke associational standing. It is clear from the face of the complaint that the first two factors are satisfied, as the retirees would have standing to sue in their own right and the retirees' interest in their retiree health benefits is germane to the RSG's purpose. SAC ¶ 10 ("Plaintiff RSG is a mutual benefit non-profit membership organization that promotes and protects the welfare, benefits, and interests of employees retired from public service in Contra Costa County"). As to the third factor, the Ninth Circuit has held that "[i]ndividualized proof from the members is not needed where . . . declaratory and injunctive relief is sought rather than monetary damages." <u>Associated Gen. Contractors,</u> 159 F.3d at 1181 (citation omitted). Because RSG seeks declaratory and injunctive relief, the third factor also is satisfied. <u>See</u> SAC ¶ 3.

Accordingly, the County's Rule 12(b)(1) motion to dismiss the SAC for lack of standing is DENIED.

## IV. CONCLUSION

The County's motion to dismiss each of the claims in the SAC under Federal Rules of CIvil Procedure 12(b)(6) and 12(b)(1) is DENIED.

**IT IS SO ORDERED**.

Dated: May 8, 2013

_____
JON S. TIGAR
United States District Judge