UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETIREE SUPPORT GROUP OF CONTRA COSTA COUNTY,<br><br>  Plaintiff,<br><br>  v.<br><br>CONTRA COSTA COUNTY,<br><br>  Defendant. | Case No. 12-cv-00944-JST<br><br>**ORDER GRANTING LEAVE TO FILE THIRD AMENDED COMPLAINT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PRELIMINARILY APPROVING SETTLEMENT**<br><br>Re: ECF No. 137 |

Before the Court is Plaintiff's Motion for Leave to File Third Amended Complaint, to Conditionally Certify Settlement Class, for Preliminary Approval of Settlement, for Approval of the Form and Method of Class Notice, for Appointment of Counsel for the Class, for Appointment of Settlement Administrator, and Setting a Date for the Final Approval Hearing. ECF No. 137. The Court will grant the motion.

**I.  BACKGROUND**

Plaintiff Retiree Support Group of Contra Costa County ("RSG") brings this motion after extended settlement discussions with Defendant Contra Costa County ("the County").

**A.  Factual Background**

RSG is a non-profit organization that promotes and protects the welfare, benefits, and interests of retired employees of the County ("retirees") and their dependents. Second Amended Complaint, ECF No. 43 ("SAC") ¶¶ 3, 20. Some but not all of the retirees were represented by unions during their employment with the County. Id. ¶ 3.

RSG alleges that the County promised the retirees that they would receive retiree health care benefits for themselves and their dependents if they met certain criteria, and that the County would pay for 80% or more of the costs of these benefits for at least one plan for the lifetime of

the retirees ("the 80% promise"). Id. ¶ 1. In exchange for the 80% promise, the retirees "gave up wage increases and other employment compensation and benefits," such as cost of living adjustments. Id. ¶¶ 1, 40.

RSG alleges that the 80% promise is contained in implied terms of several Memoranda of Understanding ("MOU") that were ratified through resolutions by the County's Board of Supervisors and in the resolutions themselves. In the complaint, RSG identifies several MOUs and Board resolutions that allegedly contain the 80% promise; some of them pertain to employees represented by unions and some pertain to unrepresented employees.

The ratified MOUs pertaining to represented employees contain express provisions stating that retiring employees would be eligible to receive future medical benefits if they were enrolled in one of the County's health plans at the time they retired. Id. ¶¶ 16-21. The 80% promise is allegedly contained in the implied terms of these MOUs. RSG alleges that the County's intent to create vested retiree health benefits in accordance with the 80% promise is shown by extrinsic evidence, including the testimony of labor representatives and County officials who negotiated the agreements containing the 80% promise, statements made by members of the Board of Supervisors, and benefit materials and booklets. Id. ¶¶ 21-27.

The Board resolutions pertaining to unrepresented employees contain express provisions stating that retirees would be able to retain their health benefits after entering retirement. Id. ¶¶ 35-37. The 80% promise allegedly is contained in the implied terms of the resolutions. SAC ¶ 42. RSG alleges that the County's intent to create vested retiree health benefits per the 80% promise is shown by the County's practice of "mirror[ing] the retiree health benefits provided to unrepresented management employees to the benefits negotiated by its represented employees," and by the same extrinsic evidence discussed above with respect to the represented employees. Id. ¶¶ 36, 21-27.

RSG alleges that the County breached the 80% promise beginning on January 1, 2010, when it capped its contribution to the retirees' health benefits at a flat dollar amount. Id. ¶¶ 2, 43. This increased the retirees' share of the costs of their health benefits and shifted future cost increases onto the retirees. Id.

RSG brings six claims against the County: (1) breach of contract, (2) impairment of contract under the California Constitution, (3) impairment of contract under the United States Constitution, (4) promissory estoppel, (5) due process violations under the California Constitution, and (6) due process violations under the United States Constitution. RSG seeks injunctive and declaratory relief that would require the County to fulfill its obligations under the 80% promise. Id. ¶ 3.

### B. Procedural History

Before this action was reassigned to this Court, District Judge White dismissed all of RSG's claims with leave to amend on the basis that each of the claims requires the existence of an express or implied contract and that RSG failed to plead sufficient facts to establish the existence of such a contract. He required that any amended complaint "allege all of the specific resolutions or ordinances that contain the 80% Promise for each of Plaintiff's members" or, if the 80% promise is contained in implied terms, the amended complaint "should allege the language or circumstances accompanying the passage of these ordinances and/or resolutions that clearly evince an intent to create private rights of a contractual nature enforceable against the County." ECF No. 32. Plaintiff filed its SAC on November 30, 2012. ECF No. 43. The Court denied a subsequent motion to dismiss the SAC on May 8, 2013. ECF No. 70.

In early 2015, the case was referred to mediation. ECF No. 115. The parties participated in two days of mediation in July and August of 2015 before the Honorable Ronald M. Sabraw. ECF No. 137 at 13. Plaintiff filed this motion on March 17, 2016. Id. Defendant does not oppose the motion.

## II. LEAVE TO AMEND

Plaintiff first requests, as the parties have agreed, that it be granted leave to file a Third Amended Complaint, which is attached as an exhibit to their proposed order. ECF No. 139-2 ("TAC"). The TAC seeks for the first time to add class allegations and adds several individual plaintiffs to serve as class representatives. ECF No. 137 at 17; see also TAC ¶¶ 12-17, 53-62.

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P.

3

1  15(a)(2). Because the opposing party agrees that leave to amend should be granted, and because it will facilitate the proposed settlement, the Court grants Plaintiffs' motion for leave to file their TAC.

### III.     CLASS CERTIFICATION

#### A.     Legal Standard

Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because they rely on Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

Settlements that occur before formal class certification also require a higher standard of fairness. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir.2000). In reviewing such settlements, in addition to considering the above factors, the court must also ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir.2011) (internal quotation marks and citations omitted).

#### B.     Analysis

4

Plaintiff seeks to certify the following class:

> All eligible County retired employees receiving County retiree health benefits who retired on or before December 31, 2015 except for Excluded Retirees as defined below. The Class includes a) eligible retirees of Board of Supervisors governed special districts who are in County Health Plans and do not receive health care coverage under the Public Employees' Medical and Health Care Act, Government Code § 22751, et. seq., ("PEMHCA") and b) eligible retirees from the Contra Costa County Superior Court who were County employees at the time of retirement and who are in County Health Plans and do not receive health care coverage under PEMHCA.
>
> Excluded from the class are any Retirees from the County who were represented at the time they retired by the California Nurses Association ("CNA"), or by the Physicians' and Dentists' Organization of Contra Costa ("PDOCC"), and the Retirees from the County who are receiving health care coverage under PEMHCA ("Excluded Retirees").

ECF No. 137 at 20. Plaintiff states that the class consists of approximately 4,000 retired County employees. Id. at 14. It further explains that retirees represented by CAN and PDOCC, or who are receiving health care coverage under PEMHCA, are not included in the class "because the County has either not reduced its contributions to their health care benefits, or did not reduce its contributions at the same time and in the same manner as it did for Class Members." Id.

As explained further below, the Court grants the request to conditionally certify the class for settlement purposes.

### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

Here, the parties allege there are approximately 4,000 class members. Joinder of this many members would be impracticable. The parties have also concretely defined the members of the class.

### 2. Rule 23(a)(2): Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), "even a single common

question" is sufficient.  Wal-Mart, 131 S. Ct. at 2556 (quotations and internal alterations omitted). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 2551.

Plaintiff identifies several commonly shared issues of law and fact, including whether the County entered into the alleged MOUs with their employee labor organizations, whether those MOUs promised to pay 80% of health care costs for retirees, whether that promise provided vested lifetime rights to the County's contributions, and whether the County subsequently breached those rights by freezing their healthcare premium subsidies.  ECF No. 137 at 21.  These issues will be central to the resolution of the case and are commonly shared by the class members,

### 3. Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The TAC adds several retirees as additional plaintiffs and proposed class representatives. These plaintiffs are all retirees formerly employed by the County and receiving medical benefits through County-sponsored health plans.  TAC ¶¶ 12-17.  In its motion, the Plaintiff contends that their claims arise "from the same alleged events and course of conduct as the Class's claims and are based on the same legal theories―i.e. that the County breached a contract to pay lifetime retiree medical benefits pursuant to the 80% Promise."  ECF No. 137 at 22.  The Court concludes the proposed class representatives' interests are aligned with the interests of the class.

### 4. Rule 23(a)(4): Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed:

(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).

No party has suggested, and the Court has not found, any evidence in the record suggesting that any of the proposed class representatives have a conflict of interest with the other class members. Plaintiff contends that the plaintiffs shares common claims with the class and seek the same relief based on the same underlying allegations. ECF No. 137 at 22. Moreover, class counsel has submitted a declaration identifying their specialized expertise in litigating pension and employee benefit cases, their experience in representing these plaintiffs and similar plaintiffs in other cases, and the firm resources available to represent the class. ECF No. 138 ¶¶ 3-11. The Court concludes these contentions satisfy the adequacy requirement.

### 5. Rule 23(b)(3): Predominance and Superiority

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quotation omitted).

As noted above, the central issues in this case are commonly shared by the members of the class. These issues appear to predominate over any individual issues that might affect a particular plaintiff or class member. Therefore, resolving these disputes in a single class action, or in this case a single class settlement, would be more efficient than resolving them on an individual level. The proposed class satisfies the requirements of Rule 23(b)(3).

Accordingly, the Court finds that the proposed class meets the requirements under Rule 23.

It therefore certifies the proposed class for settlement purposes, appoints the individual named plaintiffs in the TAC as class representatives, and appoints Plaintiff's counsel as class counsel.

## IV. PRELIMINARY APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276.

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

### B. Terms of the Settlement

The benefits of the proposed settlement are based on whether a particular class member is Medicare-eligible or non-Medicare-eligible. For non-Medicare-eligible members, the settlement calls for the County to provide them and their dependents with access to "the same health plans and plan providers as the County provides for active County employees at any given time." ECF No. 137 at 14. The result of this, the Plaintiff argues, is that the retirees "will remain blended with active County employees for purposes of rate setting, and will have the same premiums, co-pays, and deductibles as active employees," which is advantageous to retirees "because if premiums were set for them separately, their relatively advanced ages (compared to the age range of the group including them and actives) would result in higher premiums." Id. at 14-15.

The settlement provides that the County will pay up to a "Maximum Fixed Monthly Premium" for these health plans, which it identifies by plan provider, plan, and tier in an exhibit attached to the settlement. ECF No. 139-1 at 33-40. Except as otherwise provided in the agreement, the monthly premium amount will remain fixed year-to-year. Plaintiff states that the Maximum Fixed Monthly Premium represents approximately 71.9% of the 2016 premiums for the least expensive plan offered by the County, or $509.92 of $709.06. ECF No. 137 at 24; ECF No. 138-3 at 34. In the event that the health plan premium for a particular plan year is less than the Maximum Fixed Monthly Premium, the County will pay 100% of the premium minus one cent.

ECF No. 137 at 15 n.6. The settlement also "provides that for some retirees where the County froze the premium subsidy at a level higher than the current premium costs, the County will still pay up to the Maximum Premium Subsidy stated in Exhibit 2 less $0.01, as the premium cost for those plans rises." ECF No. 137 at 15. Dental coverage is also subsidized at rates set forth in the same exhibit. ECF No. 138-3 at 41.

The County currently provides benefits through two "tiers" – either retiree only or retiree plus one or more family members, and notes the possibility that the County would move to a three tier system: retiree, retiree plus one dependent, and retiree plus two or more dependents. ECF No. 137 at 15. This would lead to increased premiums for the third, new tier, and the settlement therefore provides for an additional $150 per month subsidy. Id. at 16.

For Medicare-eligible members and their dependents, the County shall provide the same access to its current health care providers, but only "to those providers' Medicare supplemental and Coordination of Benefits health plans offered by the County." Id. at 16. As with non-Medicare-eligible members, the County will contribute to those plans up to the Maximum Fixed Premium Fixed Subsidy. Id. At present, this means that the premiums for many plans available to Medicare-eligible members will be fully covered, minus one cent. Id. The settlement also provides that the Maximum Fixed Premium Subsidy will increase by $25 for Medicare-eligible retirees on January 1, 2021. Id. Dental coverage is also subsidized. Id.

The benefits provided to non-Medicare-eligible members shall continue until those members become Medicare-eligible. ECF No. 137 at 16. The benefits to Medicare-eligible members shall continue for the lifetimes of those members. ECF No. 138-3 at 13.

The settlement does not provide for any subsidies of premiums to survivors of County retirees upon the death of the retiree. Id. The Plaintiff states, however, that survivors will continue to be eligible to participate in the County's group plans at their own expense as long as they maintain continuous enrollment. Id. at 17.

In exchange for these benefits, the class will release:

> all claims that were alleged or could have been alleged in the Lawsuit by the Releasing Parties, including without limitation, any and all claims, rights, demands, charges, complaints, obligations, actions, debts, suits and causes of action, whether

> known or unknown, suspected or unsuspected, accrued or unaccrued, for past or future injuries or damages, including without limitation, injunctive, declaratory or equitable relief, or monetary damages of any kind, including without limitation, statutory, actual, compensatory, consequential, special, or punitive however described, based on actions, representations, or omissions preceding Final Approval of this Agreement arising out of or relating in any way to any of the legal, factual, or other allegations made in the Lawsuit, or any legal theories that could have been raised based on the allegations of the Lawsuit that relate in any way to the health care provided by the County to the Releasing Parties under law, contract, policy, practice, legislation or statute, including without limitation claims under federal, state, or local constitutions, statutes, codes, regulations, or resolutions, any claims that the County promised or guaranteed to pay a certain percentage of subsidy for retiree health care, or to treat retirees the same as current County employees with respect to health care subsidies, and any claims under any MOU, contract, tort or common law of any kind, or otherwise.

ECF No. 138-3 at 17.

Class members are not required to submit claims forms, opt in, or take any other affirmative action to participate in the settlement and receive benefits. Id. at 25. They will need to provide a written and signed request to opt out of the settlement. Id. at 17. If more than 5% of the class opts out, the County has the right to void the settlement agreement. Id.

Finally, the settlement contains no provision for attorneys' fees. Each of the parties shall bear their own attorneys' fees and costs. Id. at 17. There is also no provision for service awards to any named plaintiff. Id.

**C.     Analysis**

Plaintiff's motion contends that the settlement agreement provides substantial benefits to the class members and their dependents and contains no obvious deficiencies. ECF No. 137 at 24. They note that the agreement was reached after extensive litigation, discovery, motion practice, "two full days of arm's-length mediation before an experience neutral mediator, and lengthy follow-up negotiations." ECF No. 137 at 24.

Plaintiff cites the difficulty in "adducing sufficient facts to support a claim for an implied contract term creating a vested lifetime right to retiree medical benefits," as well as the extensive cost and time of litigating the case, during which class members could be affected by the "well-publicized historical rise in medical insurance premiums." Id. at 27. They contend that the securing of subsidized lifetime benefits for both the retirees and their dependents is a substantial economic benefit for the class members in light of the difficulties involved in litigation. Id. In

reference to the the extent of discovery completed and the state of the proceedings, Plaintiff notes that the parties completed "extensive discovery and investigation," and that "the degree to which the parties understood and litigated their positions is highlighted by the fact that the case settled only after two full days of mediation and significant subsequent negotiation." Id. at 28.  Finally, in regards to the experience and views of counsel, Plaintiff states that class counsel, who are "very experienced in class action litigation, particularly in employee benefits cases," endorse the settlement and recommend that it be approved.  Id.

The Court concludes that the settlement should be preliminarily approved.  An agreement to provide 71.9% of the least expensive offered health plan is indeed of significant economic value to the class members, especially when the alleged claim is that the County originally promised to provide 80%.  As Plaintiff explains, many retirees who are Medicare-eligible will continue to pay just one cent towards their monthly premiums, and these benefits will last for the retirees' lifetimes.  The Court also takes note that no attorneys' fees or class representative awards will be apportioned from the economic benefits provided by the settlement.  When compared with the costs, time, and risks involved in litigation, this settlement is within the range of possible approval.[1]

The Court further concludes that the proposed notice procedure should be approved.  The proposed notice meets all requirements under Federal Rule of Civil Procedure 23(c)(2)(B), as it clearly and concisely states (i) the nature of the action, see ECF No. 139-3 at 5; (ii) the definition of the class certified, see id.; (iii) the class claims issues, or defenses, see id.; (iv) that a class member may enter an appearance through an attorney if the member so desires, see id. at 3; (v)

---

[1] Because this settlement was reached prior to certification of the class, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny.  In re Bluetooth, 654 F.3d at 946.  In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  Id.  Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund.  Id. at 947.  In the present case, plaintiffs' counsel are not seeking any compensation from the settlement, and the settlement does not contain either a clear sailing provision or a reversionary clause.  The settlement therefore passes muster under the heightened scrutiny required by In re Bluetooth.

that the court will exclude from the class any members who requests exclusion, see id.; (vi) the time and manner for requesting exclusion, see id. at 8; and (vii) the binding effects of a class judgment on a class member, see id. at 9. The notice provides a website, telephone number, and contact information for class counsel. Id. at 7, 10. The Court also approves the procedure for distributing the class notice, as set forth below.

## CONCLUSION

Plaintiff's motion is granted. Accordingly, the Court orders as follows:

1. Plaintiff is granted leave to file the TAC attached as an exhibit, ECF No. 139-2, and shall do so within seven days of this order.

2. The following class is conditionally certified for settlement purposes under Federal Rule of Civil Procedure 23:

> All eligible County retired employees receiving County retiree health benefits who retired on or before December 31, 2015 except for Excluded Retirees as defined below. The Class includes a) eligible retirees of Board of Supervisors governed special districts who are in County Health Plans and do not receive health care coverage under the Public Employees' Medical and Health Care Act, Government Code § 22751, et. seq., ("PEMHCA") and b) eligible retirees from the Contra Costa County Superior Court who were County employees at the time of retirement and who are in County Health Plans and do not receive health care coverage under PEMHCA.
>
> Excluded from the class are any Retirees from the County who were represented at the time they retired by the California Nurses Association ("CNA"), or by the Physicians' and Dentists' Organization of Contra Costa ("PDOCC"), and the Retirees from the County who are receiving health care coverage under PEMHCA ("Excluded Retirees").

3. The individual plaintiffs named in the TAC, Michael Sloan, Deborah Elite, Susanne Beadle, Billie Joe Wilson Elkin, Alyn Goldsmith, and Alice Grothmann, are appointed as class representatives, and counsel for RSG is appointed as class counsel.

4. The proposed settlement agreement, ECF No. 138-3, is preliminarily approved.

5. The proposed form and manner of the Class Notice, ECF No. 139-3, is approved.

6. Simpluris is appointed as Settlement Administrator

7. The parties shall follow the following schedule:

| Event | Deadline |
|---|---|
| County will provide Settlement Administrator with contact information for the Class List | 15 days after date of this order |
| Settlement Administrator mails class notices to Class List | 10 days after receipt of Class List |
| Re-mailing of mail returned as undeliverable | 7 days after undeliverable mail is returned |
| Deadline for class members to opt out or object | 60 days after mailing of class notice |
| Plaintiff's Motion for Final Approval | September 22, 2016 |
| Plaintiff's Reply Brief | October 13, 2016 |
| Settlement Administrator's declaration of compliance with settlement agreement | October 13, 2016 |
| Fairness Hearing | October 27, 2016 at 2:00 p.m. |

**IT IS SO ORDERED.**

Dated: June 14, 2016

_____
JON S. TIGAR
United States District Judge