1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7   RETIREE SUPPORT GROUP OF
    CONTRA COSTA COUNTY,                    Case No.  12-cv-00944-JST

8                Plaintiff,

9         v.                                **ORDER DENYING MOTION TO
                                            INTERVENE**
10  CONTRA COSTA COUNTY,                    Re: ECF No. 150

11               Defendant.

12        Before the Court is a Motion to Intervene filed by Proposed Intervenors AFSCME Local

13  2700, AFSCME Local 512, AFSCME Retiree Subchapter 142, and Richard Cabral ("Proposed

14  Intervenors").  ECF No. 150.  Both Plaintiff Retiree Support Group of Contra Costa County

15  ("RSG") and Defendant Contra Costa County ("County") oppose the motion.  The Court

16  concludes that the motion is untimely and therefore denies it.

17  **I.    BACKGROUND**

18        **A.    Factual and Procedural History**

19        Proposed Intervenors seek to intervene in this case in order to object to a proposed

20  settlement between RSG and the County.  The Court recently granted a motion for preliminary

21  approval of the settlement.

22        RSG is a non-profit organization that promotes and protects the welfare, benefits, and

23  interests of retired employees of the County ("retirees") and their dependents.  Second Amended

24  Complaint, ECF No. 43 ("SAC") ¶¶ 3, 20.  Some but not all of the retirees were represented by

25  unions during their employment with the County.  Id. ¶ 3.

26        RSG alleges that the County promised the retirees that they would receive retiree health

27  care benefits for themselves and their dependents if they met certain criteria, and that the County

28  would pay for 80% or more of the costs of these benefits for at least one plan for the lifetime of

United States District Court
Northern District of California

the retirees ("the 80% promise").  Id. ¶ 1.  In exchange for the 80% promise, the retirees "gave up wage increases and other employment compensation and benefits," such as cost of living adjustments.  Id. ¶¶ 1, 40.  RSG alleges that the 80% promise is contained in implied terms of several Memoranda of Understanding ("MOU") that were ratified through resolutions by the County's Board of Supervisors and in the resolutions themselves.  RSG alleges that the County's intent to create vested retiree health benefits in accordance with the 80% promise is evinced by extrinsic evidence, including the testimony of labor representatives and County officials who negotiated the agreements containing the 80% promise, statements made by members of the Board of Supervisors, and benefit materials and booklets.  Id. ¶¶ 21-27.

The Board resolutions pertaining to unrepresented employees contain express provisions stating that retirees would be able to retain their health benefits after entering retirement.  Id. ¶¶ 35-37.  The 80% promise allegedly is contained in the implied terms of the resolutions.  SAC ¶ 42.  RSG alleges that the County's intent to create vested retiree health benefits per the 80% promise is evinced by the County's practice of "mirror[ing] the retiree health benefits provided to unrepresented management employees to the benefits negotiated by its represented employees," and by the same extrinsic evidence discussed above with respect to the represented employees.  Id. ¶¶ 36, 21-27.

RSG alleges that the County breached the 80% promise beginning on January 1, 2010, when it capped its contribution to the retirees' health benefits to a flat dollar amount.  Id. ¶¶ 2, 43.  This increased the retirees' share of the costs of their health benefits and shifted future cost increases onto the retirees.  Id.  RSG brings six claims against the County: (1) breach of contract, (2) impairment of contract under the California Constitution, (3) impairment of contract under the United States Constitution, (4) promissory estoppel, (5) due process violations under the California Constitution, and (6) due process violations under the United States Constitution.  RSG seeks injunctive and declaratory relief that would require the County to fulfill its obligations under the 80% promise.  Id. ¶ 3.

In early 2015, the case was referred to mediation.  ECF No. 115.  The parties participated in two days of mediation in July and August of 2015 before the Honorable Ronald M. Sabraw.

United States District Court
Northern District of California

1   ECF No. 137 at 13.  Plaintiff then filed a motion for leave to file a Third Amended Complaint and

2   to conditionally certify and preliminary approve the proposed class action settlement, on March

3   17, 2016.  ECF No. 137.  The motion was unopposed.  The proposed settlement provides that the

4   County will offer eligible retirees and dependents "the same health plans and plan providers as the

5   County provides for active County employees at any given time," and that it will pay up to a

6   "Maximum Fixed Monthly Premium" for these plans, which the parties allege represents

7   approximately 71.9% of 2016 premiums for the least expensive offered plans.  ECF No. 137 at 14-

8   15, 24.

9       **B.      Proposed Intervenors' Allegations**

10          Proposed Intervenors first filed an administrative motion requesting a hearing date and

11  briefing schedule for objections and an intervention motion, ECF No. 144, which was opposed by

12  both parties, ECF Nos. 145, 146.  Because Proposed Intervenors had not yet filed a motion to

13  intervene, their administrative motion was denied.  ECF No. 149.  Proposed Intervenors

14  subsequently filed this motion to intervene on April 22, 2016.  ECF No. 150.  Both parties oppose

15  the motion.  ECF Nos. 151, 155.

16          Proposed Intervenors allege that they represent and consist of current and former County

17  employees who will be affected by the settlement.  AFSCME Local 512 is the exclusive collective

18  bargaining representative for a unit "consisting of engineering technicians, income maintenance

19  program employees, clerical supervisory employees, social service staff specialists, probation

20  supervisors, and property appraiser staff employed by the County."  ECF No. 150 at 7.  AFSCME

21  Local 2700, similarly, represents a unit of general clerical employees.  Id.  AFSCME Retiree

22  Chapter 142 is "a membership organization affiliated with AFSCME," and "its members include

23  retirees who were members of either Local 512 or Local 2700 bargaining units when they were

24  active employees with the County."  Id.  Finally, Richard Cabral is a member of Retiree Chapter

25  142.  Id.  Proposed Intervenors have previously alleged that both Cabral and the membership of

26  AFSCME Retiree Chapter 142 are included in the proposed class.  ECF No. 144 at 3.

27          According to Proposed Intervenors, the two AFSCME Locals have negotiated collective

28  bargaining agreements established in "Memoranda of Understanding" ("MOUs") with the County

3

on the terms of conditions of the employees they represent when they retire.  ECF No. 150 at 7.  The MOU for Local 512 is in effect through June 30, 2016, and the MOU for Local 2700 is in effect through June 30, 2017.  Id.

In 2015, Locals 512 and 2700, along with other unions, reached a further agreement with the County regarding health coverage, which was memorialized in a "Side Letter" dated September 30, 2015.  Id. at 9. The Side Letter provides an additional "tier" of coverage as well as increases in the amount the County pays as a premium subsidy, and "[u]nder the Side Letter and the MOUs, these provisions, both the additional tier and the increase in the County's share of premium contribution, apply to retirees, including those who the proposed settlement agreements purport to cover."  Id.

However, in December 2015, members of Local 512 and Local 2700, as well as Richard Cabral, a member of Retiree Chapter 142, met with the County and were told that retirees would continue to receive the same benefits as in the past.  Id. at 10.  Local 512 and Local 2700 filed a grievance on January 15, 2016. Id. at 11.  The County rejected those grievances, and "has taken the position that the settlement's terms govern over those that prevail under the MOUs and Side Letter."  Id. at 8.

## II.     INTERVENTION AS OF RIGHT

### A.     Legal Standard

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The Ninth Circuit has summarized the requirements for intervention as of right under Rule 24(a)(2) as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

4

United States District Court
Northern District of California

Freedom from Religion Found. v. Geithner, 644 F.3d 836, 841 (9th Cir. 2011) (quoting California ex rel. Lockyer v. United States, 450 F.3d 436, 440 (9th Cir. 2006)).  Proposed intervenors must satisfy all four criteria; "[f]ailure to satisfy any one of the requirements is fatal to the application." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009).  In evaluating motions to intervene, "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention."  United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

### B.    Timeliness

Timeliness is a "threshold requirement" for intervention under Rule 24(a).  United States v. Oregon, 913 F.2d 576, 588 (1990).  Courts consider three factors when determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986).

Proposed Intervenors argue that because the parties in this case have reached a settlement, "'timeliness generally is measured from the date the proposed intervenor received notice that the proposed settlement was contrary to its interest.'"  ECF No. 150 at 13 (quoting Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 474936 (N.D. Cal. Jan 17, 2007)).  They further cite to U.S. v. Carpenter, 298 F.3d 1122, 1125 (9th Cir. 2002) for the proposition that when settlement negotiations are conducted confidentially, potential intervenors are not put on notice until the settlement terms are made public.  ECF No. 150 at 13.  Here, the settlement was approved by RSG members on February 25, 2016 and by the County Board of Supervisors on March 15, 2016, ECF No. 159, while Proposed Intervenors' motion was filed on April 22, 2016.  Thus, in regards to the second and third factors of prejudice and delay, Proposed Intervenors argue that there was no delay, and therefore no prejudice, because they sought intervention as soon as they had notice the proposed settlement was contrary to their interests.  ECF No. 150 at 14-15.

United States District Court
Northern District of California

The parties respond by noting that, unlike in <u>Carpenter</u>, Proposed Intervenors have been aware of the settlement terms and negotiations for some time, and nevertheless waited four years since the beginning of litigation and six months since they received notice of the final terms of the settlement to move to intervene.  ECF No. 151 at 11-12.  Plaintiff alleges that RSG has regularly provided updates about their claims against the County at their bi-monthly membership meetings, which were attended by Proposed Intervenors' members and leadership, and has provided information about the litigation through newsletters and the websites of RSG and RSG's counsel.  ECF No. 151 at 6-7.  It also alleges that Proposed Intervenor Richard Cabral was involved in the mediation sessions in August 2015, that RSG sent an announcement to its members in October 2015 informing them of the "main provisions" of the settlement, and that RSG held an informational meeting for its members on November 10 to present the settlement.  <u>Id.</u> at 7-8.

The parties cite to several Ninth Circuit cases suggesting that when a party is aware of settlement negotiations potentially adverse to their interests and nevertheless waits to move to intervene until the late stages of settlement, that motion is untimely.  <u>See California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>, 309 F.3d 1113, 1119 (9th Cir. 2002); <u>United States v. Oregon</u>, 913 F.2d 576, 588 (9th Cir. 1990); <u>Orange Cty. v. Air California</u>, 799 F.2d 535, 538 (9th Cir. 1986).  Proposed Intervenors, in response, rightly note that these cases are distinguishable because unlike in those cases, they have been actively involved in negotiations with the County, and contend that they did not move for intervention until now only because they were attempting "to influence the proposed settlement through political and negotiated means before the settlement became final."  ECF No. 159 at 5.  They further contend that because they participated in, and contested, the settlement negotiations, the parties have been put on notice that "certain settlement provisions might have to withstand the intervenor's challenge," and therefore that they would not be prejudiced.  <u>Id.</u> at 6.

Proposed Intervenors suggest that intervention should be granted because their involvement in negotiations suggests that they did not delay in attempting to influence the final result.  The relevant question, however, is not whether the litigants knew that a third party was dissatisfied with the progress or direction of a lawsuit, but whether that third party actually sought

1   to intervene early enough to avoid prejudice to the litigants.  Thus, the fact that Proposed

2   Intervenors were extensively involved in the out-of-court settlement negotiations, rather than

3   arguing in favor of intervention, only indicates that they were aware of the settlement's key

4   provisions and nevertheless waited to intervene until they were certain that the final agreement

5   was not to their liking.  Such a delay is improper.  <u>See United States v. Alisal Water Corp.</u>, 370

6   F.3d 915, 923 (9th Cir. 2004) (holding that a party must intervene when it "knows or has reason to

7   know that [its] interests might be adversely affected by the outcome of litigation," that a "desire to

8   save costs by waiting to intervene until a late stage in litigation is not a valid justification for

9   delay," and that holding otherwise "would encourage interested parties to impede litigation by

10  waiting to intervene until the final stages of a case" (citations omitted)).

11          Proposed Intervenors note that the settlement was not made final until March of 2016,

12  when the relevant bodies of both parties had approved it, but this additional fact does not make the

13  motion timely.  Proposed Intervenors certainly had reason to believe the negotiations would result

14  in a settlement adverse to their interests – indeed, this can be assumed from their contention that

15  they "objected to" the settlement during negotiations – and therefore "could have intervened

16  sooner to protect themselves from this eventuality." <u>Commercial Realty Projects</u>, 309 F.3d at

17  1120.  For example, Proposed Intervenors acknowledge that Richard Cabral spoke out against the

18  proposed settlement at the November 10, 2015 RSG meeting and urged its members not to

19  approve it.  ECF No. 159 at 5.  Proposed Intervenors' involvement meant they "should have

20  known that the risks of waiting included possible denial of their motions to intervene as untimely."

21  <u>Commercial Realty Projects</u>, 309 F.3d at 1120.

22          Further, while Proposed Intervenors contend that their involvement eliminates any

23  prejudice because the parties were on notice of their opposition, a lack of notice is not the only

24  source of potential prejudice.  The Ninth Circuit has held that prejudice arises when intervention

25  would "complicate the issues and prolong the litigation." <u>United States v. State of Wash.</u>, 86 F.3d

26  1499, 1504 (9th Cir. 1996).  Here, Proposed Intervenors' objections concern (1) agreements in

27  MOUs and Side Letters that are not part of the litigation before the Court, and (2) the future

28

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

interests of parties that are not members of the proposed class.[1]  Indeed, in their reply brief, Proposed Intervenors respond to the County's offered interpretation of the Side Letter by arguing that the scope of the Side Letter is subject to an arbitrator's authority, not this Court's.  ECF No. 159.  This proposition raises the likelihood that this Court would need to wait for resolution of the arbitration proceedings in order to resolve Proposed Intervenors' objections to the settlement based on the Side Letter.  Clearly, allowing intervention under these circumstances would both complicate and prolong the litigation.

Finally, in regards to the third timeliness factor, Proposed Intervenors have offered no satisfactory reason for why they chose to delay intervention until now.  While they recite the dates that the settlement was approved by each party and argue that these are the proper dates by which to measure timeliness, they do not explain why it was necessary for them to wait until the settlement was approved to move to intervene.

For these reasons, the Court concludes that the motion to intervene is untimely and therefore must be denied.[2]

## III.   PERMISSIVE INTERVENTION

Pursuant to Federal Rule of Civil Procedure 24(b)(1), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Permissive intervention "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action."  Freedom from Religion Found., 644 F.3d at 843 (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.3d 470, 473 (9th Cir. 1992)).  "Even if an applicant satisfies those threshold requirements," however, "the district court has discretion to deny

---

[1] This distinguishes the case presented here from Proposed Intervenors' cited case law of Home Builders Ass'n of N. California v. U.S. Fish & Wildlife Serv., No. CIV.S-05-629 LKK/GGH, 2006 WL 1455430, at *3 (E.D. Cal. May 24, 2006).  Unlike here, the court in that case found that "it does not appear that it has raised 'new issues or matters' that are well beyond the scope of claims and defenses raised by the existing parties. As Placer Ranch points out, they make the same fundamental arguments as those made by federal defendants."  Id.

[2] Because the Court concludes that the motion is untimely, it declines to reach the parties' additional arguments against intervention.

permissive intervention." <u>Donnelly</u>, 159 F.3d at 412. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[T]he court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties." <u>Perry</u>, 587 F.3d at 955 (quoting <u>Spangler v. Pasadena City Bd. of Educ.</u>, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, the Court has found that Proposed Intervenors' motion is untimely, and therefore the requirements for permissive intervention are not met.

## CONCLUSION

Proposed Intervenors' motion to intervene as of right is denied. Their alternative motion for permissive intervention is also denied.

IT IS SO ORDERED.

Dated: June 17, 2016

_____
JON S. TIGAR
United States District Judge