UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETIREE SUPPORT GROUP OF CONTRA COSTA COUNTY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>Defendants. | Case No.12-cv-00944-JST<br><br>**ORDER GRANTING FINAL APPROVAL**<br><br>Re: ECF No. 214 |

Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 214. The Court previously granted a motion for preliminary approval of the settlement, ECF No. 169, and held a fairness hearing on October 25, 2016. The Court will grant the motion.

**I.   BACKGROUND**

   **A.   The Parties and Claims**

Retiree Support Group of Contra Costa County ("RSG") is a non-profit organization that promotes and protects the welfare, benefits, and interests of retired employees of Contra Costa County ("retirees") and their dependents. Second Amended Complaint, ECF No. 43 ("SAC") ¶¶ 3, 20. Some but not all of the retirees were represented by unions during their employment with the County. Id. ¶ 3.

RSG alleges that the County promised the retirees that they would receive retiree health care benefits for themselves and their dependents if they met certain criteria, and that the County would pay for 80% or more of the costs of these benefits for at least one plan for the lifetime of the retirees ("the 80% promise"). Id. ¶ 1. In exchange for the 80% promise, the retirees "gave up wage increases and other employment compensation and benefits," such as cost of living adjustments. Id. ¶¶ 1, 40.

1    RSG alleges that the 80% promise is contained in implied terms of several Memoranda of
Understanding ("MOU") that were ratified through resolutions by the County's Board of
Supervisors and in the resolutions themselves.  In the complaint, RSG identifies several MOUs
and Board resolutions that allegedly contain the 80% promise; some of them pertain to employees
represented by unions and some pertain to unrepresented employees.

The ratified MOUs pertaining to represented employees contain express provisions stating
that retiring employees would be eligible to receive future medical benefits if they were enrolled
in one of the County's health plans at the time they retired.  Id. ¶¶ 16-21.  The 80% promise is
allegedly contained in the implied terms of these MOUs.  RSG alleges that the County's intent to
create vested retiree health benefits in accordance with the 80% promise is shown by extrinsic
evidence, including the testimony of labor representatives and County officials who negotiated the
agreements containing the 80% promise, statements made by members of the Board of
Supervisors, and benefit materials and booklets.  Id. ¶¶ 21-27.

The Board resolutions pertaining to unrepresented employees contain express provisions
stating that retirees would be able to retain their health benefits after entering retirement.  Id. ¶¶
35-37.  The 80% promise allegedly is contained in the implied terms of the resolutions.  SAC ¶ 42.
RSG alleges that the County's intent to create vested retiree health benefits per the 80% promise is
shown by the County's practice of "mirror[ing] the retiree health benefits provided to
unrepresented management employees to the benefits negotiated by its represented employees,"
and by the same extrinsic evidence discussed above with respect to the represented employees.  Id.
¶¶ 36, 21-27.

RSG alleges that the County breached the 80% promise beginning on January 1, 2010,
when it capped its contribution to the retirees' health benefits at a flat dollar amount.  Id. ¶¶ 2, 43.
This increased the retirees' share of the costs of their health benefits and shifted future cost
increases onto the retirees.  Id.

RSG brings six claims against the County: (1) breach of contract, (2) impairment of
contract under the California Constitution, (3) impairment of contract under the United States
Constitution, (4) promissory estoppel, (5) due process violations under the California Constitution,

2

and (6) due process violations under the United States Constitution. RSG seeks injunctive and declaratory relief that would require the County to fulfill its obligations under the 80% promise. Id. ¶ 3.

### B. Procedural Background

In early 2015, after the filing of two amended complaints, ECF Nos. 13, 43, this case was referred to mediation. ECF No. 115. The parties participated in two days of mediation in July and August of 2015 before the Honorable Ronald M. Sabraw. ECF No. 137 at 13. On March 17, 2016, Plaintiffs filed an unopposed motion to file a third amended complaint, conditionally certify the settlement class, and for preliminary approval of a settlement. Id. The Court granted the motion on June 14, 2016. ECF No. 169. First, the Court granted Plaintiffs' request to amend their complaint to add class allegations and several individual plaintiffs to serve as class representatives, noting the motion was unopposed and would facilitate settlement. Id. at 3. Second, the Court conditionally certified the class for settlement purposes, finding that the proposed class satisfied the requirements of Rule 23(a) and (b)(3). Id. at 7. And third, the Court preliminarily approved Plaintiffs' settlement. Plaintiffs filed their Third Amended Complaint on June 15, 2016.

A month later, AFSCME Retiree Chapter 57 ("Chapter 57"), through its officers Nadine Peyrucain, Ruth Roe, and Mr. Cabral, sent to many class members a letter urging them not to participate in the class settlement. ECF No. 183 at 3. In response, Plaintiffs filed an Ex Parte Motion for a Temporary Restraining Order, seeking to prevent further communication between Chapter 57 and the settlement class in this case. Id. The motion also requested an order to show cause why a preliminary injunction should not be issued. Id. On July 29, 2016, the Court denied the motion for a TRO and granted in part and denied in part the request for a preliminary injunction. Specifically, the Court granted RSG's request for the invalidation of opt-outs that resulted from Chapter 57's letter and curative notice, but rejected any form of injunction concerning Chapter 57's future communications. Id. at 9.

On September 12, 2016, Chapter 57 filed a letter in order to notify the Court that Plaintiffs had sent a letter to "class members who opted out of the settlement in an effort to try to persuade them to change their minds." ECF No. 211 at 1. Chapter 57 accused Plaintiffs of breaching the

3

1 Court's June 29 Order, which required that the parties maintain the confidentiality of class

2 members who received the corrective notice. Id. Chapter 57 also labeled as misleading the

3 statement in Plaintiffs' letter, "Don't just rely on our words." Id. Given that Chapter 57's letter

4 did not request any specific relief, the Court asked Plaintiffs to address the letter in their motion

5 for final approval. ECF No. 212. Plaintiffs filed that motion on September 22, 2016.

### C. Terms of the Agreement

The proposed settlement encompasses a class of more than 4,200 retired former County employees. ECF No. 138-3. The class is defined as follows:

> All eligible Contra Costa County retired employees receiving County retiree health benefits who retired on or before December 31, 2015 except for Excluded Retirees as defined below. The Class includes a) eligible retirees of Board of Supervisors governed special districts who are in County Health Plans and do not receive health care coverage under the Public Employees' Medical and Health Care Act, Government Code § 22751, et. seq., ("PEMHCA") and b) eligible retirees from the Contra Costa County Superior Court who were County employees at the time of retirement and who are in County Health Plans and do not receive health care coverage under PEMHCA.
>
> Excluded from the Class are County retirees who were represented at the time they retired by the California Nurses Association ("CNA") or by the Physicians' and Dentists' Organization of Contra Costa ("PDOCC"), and County retirees who are receiving health care coverage under PEMHCA

ECF No. 219-1 at 4. The benefits proposed under the settlement differ based on whether a particular class member is Medicare-eligible or non-Medicare-eligible. For non-Medicare-eligible retirees, the settlement provides access "to the same health plans and providers as the County provides for active employees at any given time." ECF No. 214 at 12. As a result, these retirees "will remain blended with active County employees for purposes of rate setting, and at all times will have the same premiums, co-pays, and deductibles as active employees." Id. This advantages the retirees, "because if premiums were set for them separately, their relatively advanced ages (compared to the age range of the group including them and actives) would result in higher premiums." Id.

Under the settlement, the County will pay up to a "Maximum Fixed Monthly Premium" for these health plans, which it identifies by plan provider, plan, and tier in an exhibit attached to the

1  settlement. ECF No. 139-1 at 33-40. Except as otherwise provided in the agreement, the monthly
2  premium amount will remain fixed year-to-year. In the event that the health plan premium for a
3  particular plan year is less than the Maximum Fixed Monthly Premium, the County will pay 100%
4  of the premium minus one cent. ECF No. 214 at 12 n.4. The settlement also "provides that for
5  some retirees where the County froze the premium subsidy at a level higher than the current
6  premium costs, the County will still pay up to the Maximum Premium Subsidy stated in Exhibit 2
7  less $0.01, as the premium cost for those plans rises." ECF No. 214 at 12. Dental coverage is also
8  subsidized at rates set forth in Exhibit 2 to the settlement agreement. ECF No. 139-1.

9        The County currently provides benefits through two "tiers" – either retiree only or retiree
10 plus one or more family members, and notes the possibility that the County would move to a three
11 tier system: retiree, retiree plus one dependent, and retiree plus two or more dependents. ECF No.
12 214 at 12. This would lead to increased premiums for the third, new tier, and the settlement
13 therefore provides for an additional $150 per month subsidy. Id. at 13.

14       For Medicare-eligible members and their dependents, the County shall provide the same
15 access to its current health care providers, but only "to those providers' Medicare supplemental
16 and Coordination of Benefits health plans offered by the County." Id. As with non-Medicare-
17 eligible members, the County will contribute to those plans up to the Maximum Fixed Premium
18 Fixed Subsidy. Id. At present, this means that the premiums for many plans available to
19 Medicare-eligible members will be fully covered, minus one cent. Id. The settlement also
20 provides that the Maximum Fixed Premium Subsidy will increase by $25 for Medicare-eligible
21 retirees on January 1, 2021. Id. Dental coverage is also subsidized. Id.

22       The benefits provided to non-Medicare-eligible members shall continue until those
23 members become Medicare-eligible. Id. The benefits to Medicare-eligible members shall
24 continue for the lifetimes of those members. Id.

25       The settlement does not provide for any subsidies of premiums to survivors of County
26 retirees upon the death of the retiree. Id. at 14. The Plaintiffs state, however, that survivors will
27 continue to be eligible to participate in the County's group plans at their own expense as long as
28 they maintain continuous enrollment. Id.

In exchange for these benefits, the class will release:

> all claims that were alleged or could have been alleged in the Lawsuit by the Releasing Parties, including without limitation, any and all claims, rights, demands, charges, complaints, obligations, actions, debts, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for past or future injuries or damages, including without limitation, injunctive, declaratory or equitable relief, or monetary damages of any kind, including without limitation, statutory, actual, compensatory, consequential, special, or punitive however described, based on actions, representations, or omissions preceding Final Approval of this Agreement arising out of or relating in any way to any of the legal, factual, or other allegations made in the Lawsuit, or any legal theories that could have been raised based on the allegations of the Lawsuit that relate in any way to the health care provided by the County to the Releasing Parties under law, contract, policy, practice, legislation or statute, including without limitation claims under federal, state, or local constitutions, statutes, codes, regulations, or resolutions, any claims that the County promised or guaranteed to pay a certain percentage of subsidy for retiree health care, or to treat retirees the same as current County employees with respect to health care subsidies, and any claims under any MOU, contract, tort or common law of any kind, or otherwise.

ECF No. 138-3 at 17.

Class members are not required to submit claims forms, opt in, or take any other affirmative action to participate in the settlement and receive benefits. Id. at 25. They will need to provide a written and signed request to opt out of the settlement. Id. at 17. If more than 5% of the class opts out, the County has the right to void the settlement agreement. Id.

Finally, the settlement contains no provision for attorneys' fees. Each of the parties shall bear their own attorneys' fees and costs. Id. at 17. There is also no provision for service awards to any named plaintiff. Id.

### D. Jurisdiction

This Court possesses federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. This Court also has jurisdiction to approve the settlement's release of claims by all Class Members, even if the Court would not independently have jurisdiction over those released claims. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006).

## II. FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's

approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).[1]

Settlements that occur before formal class certification also require a higher standard of fairness. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

**B.  Analysis**

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement is fair, adequate and reasonable.

**1.  Adequacy of Notice**

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court has previously approved the parties' proposed notice procedures for both classes. ECF No. 169. In their reply brief in support of their motion for final approval, Plaintiffs state that they have carried out this notice plan. ECF No. 219. A declaration from the Settlement Administrator Simpluris supports Plaintiffs' motion. ECF No. 220. Simpluris utilized a class list

---

[1] There is no governmental participant in this case, so the Court need not consider this factor.

7

with 4,274 class members generated by Defendants. Id. at 3. After updating the addresses Defendants had provided for each class member, Simpluris sent the Court-approved Notice of Class Action Settlement to all 4,274 individuals on the class list via First Class Mail on July 8, 2016. Id. Simpluris used Accurint's advanced address search tool to locate thirty-one individuals whose notices were initially returned as undeliverable. Id. Ultimately, ten notices remained undeliverable. Id. On August 8, 2016, Simpluris also sent a Court-ordered corrective notice to 637 class members via First Class Mail.

To further inform class members about the settlement, Class Counsel set up a toll-free number and a website to answer questions about the settlement. ECF No. 214 at 15; ECF No. 220 at 2-3. Plaintiffs report that Class Counsel spoke with almost eighty individuals during the opt-out period. Id. Most callers who expressed an opinion about the settlement viewed it favorably, and twenty-five callers stated a desire to remain in the class despite having previously submitted opt-out forms. Id.

In light of these actions, and the Court's prior order granting preliminary approval, the Court finds the parties have sufficiently provided notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### 2. Fairness, Adequacy, and Reasonableness

#### a. Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

As the parties have previously argued on preliminary approval, there is a risk that Plaintiffs will not obtain relief for the class members in the absence of settlement. Most importantly, Plaintiffs may not ultimately be able to adduce sufficient facts to support a claim for an implied contract term created a vested lifetime right to benefits, even though the California Supreme Court

has recognized that such a claim is cognizable. ECF No. 214 at 21 (citing <u>Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange</u>, 266 P.3d 287 (2011)). Accordingly, the Court concludes this factor weighs in favor of approving the settlement.

This issue, along with class certification and trial itself, would likely lead to extensive and complex proceedings on top of the already protracted litigation so far. The case has been pending before this Court since the filing of the initial complaint on February 24, 2012. ECF No. 1. Absent settlement, additional time would be spent conducting further discovery and briefing dispositive motions. As Plaintiffs note, further delay exposes class members to the risk of additional increases in their medical insurance premiums, an obvious hardship especially for retirees. ECF No. 214 at 21. The Court concludes that this factor weighs in favor of approval.

### b.     Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." <u>Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting <u>Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco</u>, 688 F.2d 615, 628 (9th Cir. 1982)). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. <u>Id.</u> (citing <u>Linney v. Cellular Alaska Partnership</u>, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, the Court has already preliminarily approved the proposed settlement amount. An agreement to provide 71.9% of the least expensive offered health plan is indeed of significant economic value to the class members, especially when the alleged claim is that the County originally promised to provide 80%. As Plaintiffs explain, many retirees who are Medicare-eligible will continue to pay just one cent towards their monthly premiums, and these benefits will last for the retirees' lifetimes. The Court also takes note that no attorneys' fees or class representative awards will be apportioned from the economic benefits provided by the settlement. When compared with the costs, time, and risks involved in litigation, this settlement is within the

range of possible approval.[2]  This factor weighs in favor of approval.

### c. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, Plaintiffs have stated in their supporting declarations that the parties engaged in "extensive discovery," including "interviews with over thirty individuals with key knowledge; depositions of six individuals; requests for production of documents and review of the over 300,000 pages of documents produced by Defendants; and propounding and responding to written discovery, including interrogatories and requests for admission." ECF Nos. 138, 139.  The Court finds the parties conducted sufficient discovery to make an informed decision regarding the settlement's adequacy.  See In re Omnivision, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).  This factor therefore weighs in favor of approval.

### d. Counsel's Experience

Plaintiffs' counsel have recommended approval of the settlement.  ECF No. 214 at 23. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).[3]  A declaration submitted Plaintiffs'

---

[2] Because this settlement was reached prior to certification of the class, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny.  In re Bluetooth, 654 F.3d at 946.  In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  Id.  Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund.  Id. at 947.  In the present case, plaintiffs' counsel are not seeking any compensation from the settlement, and the settlement does not contain either a clear sailing provision or a reversionary clause.  The settlement therefore passes muster under the heightened scrutiny required by In re Bluetooth.

[3] The Court considers this factor but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong,

lead counsel, Jeffrey Lewis, indicate that he has substantial experience, both in court and in academia, on employee benefits class action litigation. See ECF No. 138. The Court concludes this factor weighs in favor of approval.

### e. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

Here, just 1.33% of class members opted out of the settlement. ECF No. 214 at 17.[4] Additionally, only one class member has objected to the settlement. ECF No. 209. This objector stated that the County's decision to freeze its contributions to class members' health insurance premiums was unfair. Id. She objects that the settlement does not do enough to protect class members' benefits. Id. Although the Court is sympathetic to these concerns, it ultimately agrees with Plaintiffs that the settlement is in the best interests of the class.

Accordingly, the Court concludes this factor weighs in favor of a settlement. See e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

Balancing these factors, the Court finds the settlement fair and reasonable.

### III. CHAPTER 57'S CHALLENGE TO PLAINTIFFS' LETTER

The Court has considered Plaintiffs' letter to those class members who elected to opt out of the class settlement after the mailing of the corrective notice. Although the Court believes the letter was somewhat ill-advised, the Court concludes that no action is necessary, and indeed, none

---

favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

[4] Originally, 1.52% of the class opted out, but eight individuals later submitted timely requests to revoke their opt-outs, reducing the opt-out percentage to 1.33%. Id. at 17. The Court grants Plaintiffs' request to honor both opt-outs and late revocations of opt-outs submitted prior to the hearing on this motion.

11

1  was requested.  As to Chapter 57's first concern, the alleged breach of confidentiality, RSG's use
2  of the names and contact individuals who had opted out of the settlement was entirely proper.
3  RSG did not use any list created under the Court's July 29 order.  ECF No. 214 at 24.  Nor did the
4  letter's statement, "Don't just rely on our words," imply that "the Court agree[d] with the letter's
5  conclusion that the 'arguments against the settlement are bogus.'"  ECF No. 211 at 2.  Although,
6  in light of this history of this case, the use of less charged language would have been preferable,
7  Plaintiffs were within their rights to "urge" the class members to "read the Official Notice" sent by
8  this Court.  Id. at 3.

## CONCLUSION

The Court grants final approval of the proposed settlement.

IT IS SO ORDERED.

Dated:  October 25, 2016

_____
JON S. TIGAR
United States District Judge